IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED IN OPEN COURT

MAY - 1 2025

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHAN LUIS RODRIGUEZ,<br><br>Defendant. | No. 4:24-cr-17-17 |

## STATEMENT OF FACTS

The United States and the defendant, JONATHAN LUIS RODRIGUEZ (hereinafter, "the defendant"), stipulate that the following facts are true and correct, and agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. Federal law enforcement opened an investigation into a drug trafficking organization involving individuals named in this Superseding Indictment (the "DTO") in or about 2018–2019, after receiving information related to the DTO's drug distribution activities from multiple confidential informants ("CI"). Specifically, federal law enforcement began receiving information and opened an investigation related to the distribution of cocaine and heroin by BARRY ALLEN, SR. and others.

2. Law enforcement utilized a wide range of investigative techniques over the course of this multi-year investigation, to include various methods of surveillance; controlled purchases of cocaine and other controlled substances; court-authorized Title-III wire and electronic intercepts; interviews of CIs and cooperating defendants; forensic examination and analysis of stored content from seized cellular telephones; analysis of PRTT data, GPS/PLI, telephone call detail records, and telephone subscriber records; seizures of cocaine and other controlled

substances; and review and analysis of financial records, law enforcement databases, opensource records, and social media websites, among other sources. This investigation revealed a conspiracy to distribute large quantities of cocaine, fentanyl, heroin, and cocaine base. The investigation revealed that this DTO has been involved in the distribution of cocaine, fentanyl, heroin, cocaine base, and other substances in the Hampton Roads area of Virginia, and elsewhere, for several years.

3. In 2023, the investigative team gained court authorization to intercept wire and electronic communications occurring over multiple telephones utilized by the defendant's coconspirator, Carlos Bailey. During the course of those interceptions, the communications of several individuals charged in the Superseding Indictment, including the defendant, were, at times, intercepted and found to be facilitating or discussing the criminal activity of this criminal enterprise. Those communications, marked as "Pertinent" by monitors or reviewers, laid the foundation for a widespread conspiracy to obtain and distribute cocaine and other narcotics.

4. Between August 2023, and February 2024, seizures of quantities of cocaine took place. Bailey was receiving kilogram-quantities of cocaine from various sources of supply, including Eric Eugene Nixon and a source based in New York, Alexander Lora, and then distributing the cocaine to other members of the DTO for further redistribution. With regard to the cocaine supplied by Lora, Bailey would negotiate and coordinate the purchase of cocaine with Lora. Lora would arrange for a courier to deliver the supply of cocaine to Bailey in the Eastern District of Virginia (EDVA), often traveling by bus from New York or elsewhere. Bailey often would collect drug proceeds from other members of the DTO, which were used to purchase the resupply of cocaine from Lora via courier. When the courier arrived in EDVA, Bailey would meet with the courier and provide the courier with U.S. currency in exchange for the resupply of cocaine,

which he would then redistribute to members of the DTO. At times, Lora would travel to EDVA to collect outstanding drug proceeds from Bailey.

5. Using information from the T-III intercepts, law enforcement was able to seize multiple items containing cocaine. Those substances were sent to laboratories for analysis and were confirmed to contain cocaine.

6. For the cocaine not interdicted, Bailey would take the cocaine and provide distribution amounts of the narcotic to members of the conspiracy for redistribution. Portions of the money from the sale of this cocaine would be returned to Bailey, who would in turn pay the sources of supply. Bailey would keep the remaining money as profit from the distribution activities.

7. The defendant was one of the couriers who transported cocaine from Lora to Bailey, and collected drug proceeds from Bailey, in or about 2023. The defendant traveled by vehicle (often commercial bus) from New York, North Carolina, or elsewhere to EDVA. He then met with and distributed cocaine to Bailey.

8. Lora instructed Bailey to call the defendant when Lora's phone number was not in service, and Bailey often directly communicated with the defendant to arrange the transport of cocaine to EDVA. On multiple occasions in or about 2023, the defendant was recorded on T-III intercepts talking to Bailey about the distribution of cocaine, including the timing of and arrangements for the defendant's travel to EDVA.

9. Cocaine is a Schedule II narcotic controlled substance. All of the aforementioned recovered drug and non-drug evidentiary exhibits were processed, packaged, and submitted for analysis/safe storage.

10. The parties agree that the defendant conspired with other individuals, including those mentioned above, codefendants named in the Superseding Indictment, and other unindicted coconspirators, to distribute and to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine and that he did in fact possess with intent to distribute and did distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine between the dates listed in the Superseding Indictment. The parties agree that the defendant is responsible for less than 15 kilograms of cocaine.

11. These events occurred in the Eastern District of Virginia and elsewhere.

12. This statement of facts includes those facts necessary to support the Plea Agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully Submitted,

Erik S. Siebert
United States Attorney

By: _____
Alyson C. Yates
Special Assistant United States Attorney

After consulting with my attorney and pursuant to the Plea Agreement entered into this day between the defendant, JONATHAN LUIS RODRIGUEZ, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
JONATHAN LUIS RODRIGUEZ
Defendant

I am counsel for the defendant, JONATHAN LUIS RODRIGUEZ. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
R. Braxton Hill, IV
Defense Counsel